**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| GE VERNOVA INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:26-cv-03035 |
| | § | |
| PREETHAM BALASUBRAMANYAM, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**PLAINTIFF GE VERNOVA INC.'S VERIFIED MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff GE Vernova Inc. ("GEV") files this Verified Motion for Temporary Restraining

Order and Preliminary Injunction (the "Motion") and requests this Court grant a temporary

restraining order and preliminary injunction[1] enjoining Defendant Preetham Balasubramanyam

("Balasubramanyam") from breaching his noncompete and nondisclosure agreements.

---

[1] GEV has also filed a Motion for Expedited Discovery.  ECF No. 7.  GEV incorporates its Motion
for Expedited Discovery here and likewise seeks an order granting its discovery motion.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.    ISSUES TO BE RULED UPON........................................................................................ 1

III.    SUMMARY OF THE ARGUMENT ................................................................................ 1

IV.    FACTUAL BACKGROUND .......................................................................................... 3

    A.    GEV directly competes with Bloom Energy in the power generation segment, particularly for data center customers. .......................................................................... 3

    B.    Balasubramanyam spent nearly two decades at GEV, where he acquired extensive knowledge of GEV's Confidential Information......................................................... 4

    C.    Balasubramanyam agreed to protect GEV's Confidential Information and to not work for GEV's competitors in exchange for substantial equity awards and access to GEV's Confidential Information.................................................................................. 6

        1.    Balasubramanyam's 2021 to 2026 Grant Agreements ............................... 6

        2.    Balasubramanyam's Employee Innovation and Proprietary Information Agreement 8

    D.    Balasubramanyam resigns to work for Bloom Energy in violation of his post-employment obligations to GEV.................................................................................. 10

V.    LEGAL STANDARD.................................................................................................... 10

VI.    ARGUMENT AND AUTHORITIES................................................................................ 11

    A.    GEV has a substantial likelihood of success on the merits.......................................... 11

        1.    GEV has a high likelihood of succeeding on the merits of its breach of contract claim on the Grant Agreements. ..................................................... 11

        2.    GEV has a high likelihood of succeeding on the merits of its breach of the EIPIA claim. 17

        3.    GEV has a high likelihood of succeeding on the merits of its trade secret misappropriation claim. .......................................................................... 18

    B.    GEV will suffer irreparable harm if a temporary restraining order and preliminary injunction are not granted.......................................................................................... 21

    C.    GEV's threatened injury greatly outweighs any potential harm to Balasubramanyam.22

    D.    Granting GEV a temporary restraining order and preliminary injunction will not disserve the public interest. ......................................................................................... 24

    E.    GEV is willing to post a bond, if necessary................................................................ 24

VII.    CONCLUSION ......................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accruent, LLC v. Short*,
    No. 1:17-CV-858-RP, 2018 U.S. Dist. LEXIS 1441 (S.D. Tex. Jan. 4, 2018)........................14

*Am. Exp. Fin. Advisor, Inc. v. Scott*,
    955 F. Supp. 688 (N.D. Tex. 1996) ....................................................................................22

*B & W Supply, Inc. v. Beckman*,
    305 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)......................................12

*BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*,
    No. H-09-2539, 2010 U.S. Dist. LEXIS 93503 (S.D. Tex. July 6, 2010) ..............................22

*Bank of Montreal v. Sunrise Energy Co.*,
    No. H-93-3459, 1994 U.S. Dist. LEXIS 21416 (S.D. Tex. Mar. 23, 1994) ...........................11

*Changing Surface, Inc. v. Crum*,
    No. 04-02-00056-CV, 2002 Tex. App. LEXIS 6228 (Tex. App.—San Antonio
    Aug. 28, 2002, no pet.) .......................................................................................13, 14, 15

*Computershare Tr. Co. v. Nat'l Ass'n v. Thistle Creek Partners, L.P.*,
    No. 4:25-CV-03454, 2025 U.S. Dist. LEXIS 267958 (S.D. Tex. Aug. 20,
    2025) ......................................................................................................................10, 11

*Daily Instruments Corp. v. Heidt*,
    988 F. Supp. 2d 553 (S.D. Tex. 2014) ..............................................................................22

*Daily Instruments Corp. v. Heidt*,
    998 F. Supp. 2d 553 (S.D. Tex. 2014) .............................................................................2, 24

*Daniels v. Radley Staffing, LLC*,
    No. 14-19-00054-CV, 2021 Tex. App. LEXIS 635 (Tex. App.—Houston
    [14th Dist.] Jan. 28, 2021, no pet.)....................................................................................18

*Fox v. Tropical Warehouses, Inc.*,
    121 S.W.3d 853 (Tex. App.—Fort Worth 2003, no pet.)...........................................18, 19, 20

*Gallagher Healthcare Ins. Servs. v. Vogelsang*,
    312 S.W.3d 640 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)...................................13

*Hartford Fire Ins. Co. v. 3i Constr., LLC*,
    NO. 3:16-CV-00992-M, 2017 U.S. Dist. LEXIS 174549 (N.D. Tex. May 18,
    2017) .................................................................................................................................23

*HMS Holdings v. Public Consulting Grp.*,
No., 05-15-00925-CV, 2016 Tex. App. LEXIS 3131 (Tex. App.—Dallas Mar. 28, 2016, no pet.) ......................................................................................................20

*IAC, Ltd. v. Bell Helicopter Textron, Inc.*,
160 S.W.3d 191 (Tex. App.—Fort Worth 2005, no pet.)................................................2, 20, 22

*Marsh USA Inc. v. Cook*,
354 S.W.3d 764 (Tex. 2011)......................................................................................1, 12

*McGowan & Co., Inc. v. Bogan*,
93 F. Supp. 3d 624 (S.D. Tex. 2015) ......................................................................17

*McKissock, LLC v. Martin*,
267 F. Supp. 3d 841 (W.D. Tex. 2016).....................................................................22

*Opulent Life Church v. City of Holly Springs, Miss.*,
697 F.3d 279 (5th Cir. 2012) ......................................................................................10

*Realogy Holdings Corp. v. Jongebloed*,
957 F.3d 523 (5th Cir. 2020) ......................................................................................10

*Rugen v. Interactive Business Sys.*,
864 S.W.2d 548 (Tex. App.—Dallas 1993, no writ) ..................................................21

*Ryan LLC v. FTC*,
739 F. Supp. 3d 496 (N.D. Tex. 2024) ....................................................................11

*Salas v. Chris Christensen Sys.*,
No. 10-11-000107-CV, 2011 Tex. App. LEXIS 7530 (Tex. App.—Waco Sept. 14, 2011, no pet.) ......................................................................................................13

*Signet Mar. Corp. v. Kykanen*,
No. H-23-1269, 2023 U.S. Dist. LEXIS 192167 (S.D. Tex. Oct. 26, 2023) ...........................19

*T-N-T Motorsports v. Hennessey Motorsports*,
965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ..................................................20, 22

*Traders Int'l Ltd. v. Scheuermann*,
No. H-06-1632, 2006 U.S. Dist. LEXIS 61995 (S.D. Tex. Aug. 30, 2006) ...........................22

*Transperfect Translations, Inc. v. Leslie*,
594 F. Supp. 2d 742 (S.D. Tex. 2009)....................................................................20

*Tranter, Inc. v. Liss*,
No. 02-13-00167-CV, 2014 Tex. App. LEXIS 3398 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.)......................................................................................12

**Statutes**

TEX. BUS. & COMM. CODE § 15.50(a) ..................................................................................12

TEX. CIV. PRAC. & REM. CODE § 134A.003 ..........................................................................18, 19

**Other Authorities**

https://www.bloomenergy.com/blog/the-ai-revolution-how-fuel-cells-are-solving-
the-data-center-power-challenge/ (last visited April 27, 2026) ..................................................4

## I.   INTRODUCTION

1.      GEV filed this lawsuit because Balasubramanyam breached his noncompete and nondisclosure agreements by working for Bloom Energy Corp. ("Bloom Energy") in a competitive role.  These post-employment covenants are meant to protect GEV's confidential information and proprietary trade secrets ("Confidential Information")[2].  Balasubramanyam's wrongful conduct has caused, and is continuing to cause, irreparable harm to GEV for which there is no adequate remedy at law.  GEV will continue to suffer irreparable harm unless Balasubramanyam's wrongful acts are enjoined by the Court.

## II.   ISSUES TO BE RULED UPON

2.      Issue One: Whether GEV is entitled to a temporary restraining order enjoining Balasubramanyam from working at Bloom Energy in a role that violates his noncompete.

3.      Issue Two: Whether GEV is entitled to a temporary restraining order enjoining Balasubramanyam from violating his nondisclosure agreement and the threatened misappropriation of GEV's Confidential Information under the Texas Uniform Trade Secrets Act.

## III.   SUMMARY OF THE ARGUMENT

4.      GEV is substantially likely to prevail on each of its claims against its former employee Preetham Balasubramanyam.  First, GEV's breach of contract claim on the Grant Agreements is straightforward: Balasubramanyam entered into valid, enforceable agreements containing noncompete provisions ancillary to awards of substantial equity.  *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011).  The noncompete contains reasonable restrictions as

---

[2] GEV's Confidential Information is defined in the Employee Innovation and Proprietary Information Agreement, discussed *infra*.  *See* ECF No. 1-1, Ex. A-1.  Confidential Information "refers to information and compilations of information, in any form . . . that [Balasubramanyam] gain[ed] knowledge of or access to as a consequence of [his] employment with [GEV] if [GEV] has not made it public or authorized public disclosure of it[.]" *Id.*

to time (one year), geographic scope (limited to areas where Balasubramanyam had a material presence or received GEV's Confidential Information), and scope of activity (limited to work similar to that performed at GEV or involving competitive products and services). GEV fully performed under the Grant Agreements, and Balasubramanyam breached them by joining Bloom Energy—a direct competitor—in a competitive role. ECF No. 1-1, Ex. A, Intile Decl. ¶¶ 20–21, 23–24; ECF No. 1-1, Ex. B-10.

5.      Second, GEV's claim for breach of the Employee Innovation and Proprietary Information Agreement (the "EIPIA") claim likewise succeeds: Balasubramanyam agreed to keep GEV's Confidential Information confidential, and his current role positions him to necessarily and inevitably use and disclose that information to GEV's detriment.

6.      Third, GEV's trade secret misappropriation claim under the Texas Uniform Trade Secrets Act is also substantially likely to prevail on the merits. Balasubramanyam possesses GEV's Confidential Information and is working for a direct competitor in a role where that information will be deployed against GEV. Texas law presumes harm under these circumstances. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.).

7.      Finally, the remaining injunctive relief factors favor GEV as well: Balasubramanyam agreed that breach of his obligations "inevitably would cause substantial and irreparable damage" to GEV for which money damages are inadequate (ECF No. 1-1, Ex. B-10); GEV's threatened injury far outweighs any harm to Balasubramanyam, who simply would be held to contract terms he signed; and granting injunctive relief serves the public interest because "[i]t is in the public interest to uphold contracts." *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 571 (S.D. Tex. 2014).

## IV.   FACTUAL BACKGROUND

**A.   GEV directly competes with Bloom Energy in the power generation segment, particularly for data center customers.**

8.    As artificial intelligence drives explosive demand for processing power, data centers increasingly need to generate and manage their own electricity rather than depend on the energy grid.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 13.  To address these demands, operators use different power generating technologies, including aeroderivative gas turbine packages, reciprocating engines, and fuel cells.  *Id.*

9.    Data centers represent a significant and rapidly growing portion of GEV's Aeroderivative business.  *Id.* at ¶ 7.  Aeroderivative gas turbine packages are modular, compact power generation units that, due to their compact size, high efficiency, and quick ramp rates, are ideal for peak-demand, emergency backup, renewable energy support, and remote, mobile power needs.  *Id.* at ¶ 6.

10.    Bloom Energy is a direct competitor of GEV, particularly in the emerging data center segment.  *Id.* at ¶ 20.  Historically, Bloom Energy focused on consumer and industrial customers in the 10–20 megawatt range.  *See* ECF No. 1-1, Ex. C, Bloom Energy Q4 2025 Earnings Call at 9 (Feb. 5, 2026) ("Earnings Call") ("And we are no longer the 10- and 20-megawatt system.").  Now, however, Bloom Energy has shifted its focus to capitalize on surging demand from data centers and other applications requiring significantly larger on-site power capacity:

> Bring your own power has become the mantra for data centers and power hungry factories.  On-site power has moved from being a decision of last resort to a vital business necessity.  This shift has led large power users to seek Bloom to fulfill their needs.

*See id.* at 4.

-3-

11.     Bloom Energy is rapidly adapting its technology and commercial strategy to compete in the higher-capacity 35–120 megawatt segment, including data centers and factories. *See id.* at  4 ("Bloom is rapidly becoming the standard for on-site power[.]"), 10 ("[C]an we compete? Yes, yes, we can.  And the fact that we are winning these kind of stamp sizes should show you that we are able to do that not just in high-cost value places, but in states where cost of electricity is traditionally low."); *see also* https://www.bloomenergy.com/blog/the-ai-revolution-how-fuel-cells-are-solving-the-data-center-power-challenge/  (last  visited  April  30,  2026). Bloom's website specifically identifies data centers among the industries it serves.

12.     As a result, GEV and Bloom now compete for the same opportunities.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 20.  Specifically, Bloom Energy markets its solid oxide fuel cell technology as an alternative to GEV's aeroderivative gas turbines.  *Id.* at ¶ 20.

**B.     Balasubramanyam spent nearly two decades at GEV, where he acquired extensive knowledge of GEV's Confidential Information.**

13.     Balasubramanyam worked for GEV and its predecessor entities for over 18 years, holding various executive-level positions within GEV's Aeroderivative business since July 2018. *Id.* at ¶ 5.  Most recently, he served as Executive General Manager and Head of Aeroderivative Engineering from June 19, 2023, to March 27, 2026—a senior engineering and strategic role within GEV's Power Segment.  *Id.* at ¶ 5; ECF No. 1-1, Ex. B, Conrad Decl. ¶ 9.

14.     As  head  of  GEV's  aeroderivative  engineering  portfolio,  Balasubramanyam oversaw the full lifecycle of GEV's aeroderivative gas turbine products and was directly involved in technical execution and customer-facing activities.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 8.  He participated in monthly operating meetings and commercial reviews with full transparency into business performance, strategy, and commercial operations, and partnered with GEV's product management team to evaluate segment trends, assess GEV's competitive position, and shape

GEV's short- and long-term product and business strategies. *Id.* at ¶¶ 9, 11. As a member of GEV's engineering leadership team, Balasubramanyam was also privy to GEV's Confidential Information across GEV's entire Gas Power segment, including other product lines, customer data, performance metrics, planning and strategy initiatives, and segment forecasting. *Id.* at ¶ 10.

15.     Through these roles, Balasubramanyam had access to, and gained knowledge and possession of, GEV's non-public Confidential Information—information that provides GEV a competitive advantage in the power generation segment. *Id.* at ¶¶ 8–12. GEV takes affirmative steps to protect this information, including classifying documents as confidential, using SSO-enabled access controls, and maintaining secure design record databases. *Id.* at ¶ 16.

16.     Among other examples, Balasubramanyam had access to the following categories of Confidential Information:

a. **Lead Times and Competitive Positioning**: Balasubramanyam has knowledge of GEV's supply chain and knows GEV's current and expected lead times for securing aeroderivative gas turbines and spare parts and repairs, delivering new aeroderivative units, and servicing existing units. He also is privy to GEV's short- and long-term strategy to leverage GEV's advantages and address any customer or product challenges. *Id.* at ¶ 14a.

b. **Pricing, Margins, and Cost Information**: Balasubramanyam had access to some of GEV's most sensitive information, including GEV's financial metrics, such as product costs, pricing strategies, cost baselines, and margins, all of which could allow a competitor to undercut GEV or bid more strategically against GEV. *Id.* at ¶ 14b.

c. **Long-Term Strategy and Product Roadmap**: Balasubramanyam was a contributor to GEV's long-term strategy, including its product roadmap, planned sales, capacity expansion, and strategic positioning. This also includes knowledge of GEV's capital investments, emerging product development, and expansion into adjacent segments, as well as the timing and scope of new product initiatives. All of this is critical to how GEV competes for data center customers. *Id.* at ¶ 14c.

d. **Aeroderivative Industrialization Strategy, IP, and Engineering Know-How**: Balasubramanyam played a lead role in GEV's industrialization efforts, including adapting aerospace-derived technology for commercial use, improving repair processes, identifying new vendors, and supply chain optimization. *Id.* at ¶ 14d.

e. **Customer Intelligence**: Balasubramanyam has a deep understanding of GEV's customers and targets, their names and preferences, and how GEV executes on its strategy with those customers. Any competitor would benefit from this information, independently of the type of technology and solution that each competitor may develop for customers. *Id.* at ¶ 14e.

f. **Competitive Intelligence**: Balasubramanyam has detailed knowledge of GEV's competitive landscape, including GEV's position relative to other power generation technologies and competitors. His knowledge extends not only to GEV's own products but to GEV's corporate intelligence about other suppliers and their products, acquired at significant cost to the company. *Id.* at ¶ 14f.

17. Each of these categories constitutes GEV's Confidential Information *Id.* at ¶¶ 14–15. By virtue of his role and responsibilities, Balasubramanyam gained knowledge of this information during his employment. *Id.* at ¶¶ 14–15.

**C.    Balasubramanyam agreed to protect GEV's Confidential Information and to not work for GEV's competitors in exchange for substantial equity awards and access to GEV's Confidential Information.**

**1.    Balasubramanyam's 2021 to 2026 Grant Agreements**

18. Throughout his employment, Balasubramanyam received equity-based compensation through GEV's and its predecessor General Electric's Total Rewards program. ECF No. 1-1, Ex. B, Conrad Decl. ¶¶ 3, 10. When equity awards are granted, employees must acknowledge and agree to a grant agreement to accept the award. *Id.* at ¶ 4. This occurs annually for eligible employees. *Id.* at ¶ 4. Since 2021, Balasubramanyam has been awarded significant equity in GEV and its predecessor. *Id.* at ¶ 10. For each award, Balasubramanyam acknowledged and accepted the respective grant agreement (collectively, the "Grant Agreements") and agreed to be bound by its terms. *Id.* at ¶ 10.

19. By accepting these equity awards, Balasubramanyam agreed to certain post-employment covenants as consideration for receiving the equity awards. *Id.* at ¶ 5. Specifically, Grant Agreement Section 7 contains non-solicitation and non-competition restrictions applicable

during Balasubramanyam's employment and for the one-year period following Balasubramanyam's Termination of Employment (the "Restriction Period"). *Id.* at ¶¶ 6–7.

> In addition, the Grantee agrees that during the Restriction Period, the Grantee will not, without prior written approval from the Senior Human Resources Manager of the

> Grantee's Company business segment, or if the Grantee is a Section 16 Officer, the Committee, whether directly or indirectly, perform activities or services in the Restricted Area for any Competitive Company which: (a) are similar in nature to the activities and services the Grantee performed for the Company or any Affiliate (or gained confidential information about, as described in the Employee Innovation and Proprietary Information Agreement or similar agreement with the Company, or "EIPIA") during the last two years of Grantee's employment; and/or (b) will include Grantee working on products or services that are competitive with the products or services the Grantee worked on during the last two years of Grantee's employment with the Company or any Affiliate. The term "Competitive Company" means any company or other third party that provides products and services that are competitive with the Company or any Affiliate. The term "Restricted Area" means any area within the country in which the Grantee is based where the Company or any Affiliate has material business operations as of Grantee's Termination of Employment and in which the Grantee has provided services, had a material presence or influence, or received confidential information about (as described in the EIPIA) at any time during the last two years of the Grantee's employment with the Company or any Affiliate. The Grantee understands and agrees that, given the nature

ECF No. 1-1, Ex. B-10 (emphasis added).

20.    Balasubramanyam agreed that the Restriction Period and Restricted Area described in the Grant Agreements were "reasonable and appropriate to protect the Company's legitimate business interests and goodwill." *Id.* To protect GEV's legitimate business interests and goodwill, Balasubramanyam also agreed that his breach of the noncompete would "inevitably cause substantial and irreparable damage" to GEV, thereby entitling GEV to injunctive relief:

> The Grantee agrees that any breach by him or her of the foregoing obligations inevitably would cause substantial and irreparable damage to the Company and the Affiliates for which money damages may not be an adequate remedy. Accordingly, the Grantee agrees that the Company and the Affiliates will be entitled to an injunction and/or other equitable relief, without the necessity of posting security, to prevent the breach of such obligations. The Grantee also agrees to indemnify and hold the Company and the Affiliates harmless from any loss, claim or damages, including, without limitation, all reasonable attorneys' fees, costs and expenses incurred in enforcing its rights under this Grant Agreement, as well as to repay any payments made hereunder (regardless of whether the RSUs are vested), except to the extent that such reimbursement is prohibited by law.

*Id.* (emphasis added).

### 2.   Balasubramanyam's Employee Innovation and Proprietary Information Agreement

21.   In addition to the Grant Agreements, Balasubramanyam executed an Employee Innovation and Proprietary Information Agreement ("EIPIA") through Docusign on May 1, 2025. *See* ECF No. 1-1, Ex. A-1.  The EIPIA does "not supersede or replace any term of any agreement relating to [Balasubramanyam's] non-compete obligations and/or post-employment restrictive covenants." *Id.*

22.   In the EIPIA, Balasubramanyam acknowledged that his employment "creates a relationship of confidence and trust" with GEV. *Id.*   Balasubramanyam also agreed that in consideration for his continued employment, compensation, and access to GEV's Confidential Information, he would not disclose any of GEV's Confidential Information:

**EMPLOYEE INNOVATION AND PROPRIETARY INFORMATION AGREEEMENT (EIPIA)**

I, the undersigned employee, am entering into this Employee Innovation and Proprietary Information Agreement (together with Exhibits A, B, and C, as applicable, the "**Agreement**") with GE Vernova Inc. on behalf of itself, its parent, and its direct and indirect subsidiaries (together with its subsidiaries, affiliates, successors and assigns (collectively referred to as "**Company**") effective as of the first day of my employment with the Company. This Agreement is intended to supersede and replace the terms of any previous provisions relating to Intellectual Property Rights in any other agreement that I have previously entered into with the Company.  My employment with Company creates a relationship of confidence and trust with Company.  Accordingly, in consideration of my new or continued employment by Company, the grant to me of access to, and use of, Company's Confidential Information and Specialized Training (each as defined below) during my employment, without which I would be unable to commence or continue my employment with Company, the compensation (including without limitation any pay increase, bonus, or other incentive or equity compensation) paid to me now and during my employment with Company, and/or other consideration if agreed to between me and the Company, I agree as follows:

[ . . . ]

1.2   **Nondisclosure; Recognition of Company's Rights.**  Subject to my compliance with the terms of this Agreement, Company has agreed to grant me immediate, current, and future access to Confidential Information and the Specialized Training required to fulfill the duties of my position.  I agree that Company has no pre-existing obligation to reveal Confidential Information or provide Specialized Training.  At all times during and after my employment by Company, I will hold in confidence and will not disclose, use, lecture upon, or publish any of Company's Confidential Information or Specialized Training, except as may be required in connection with my work

*Id.* (emphasis partially in original and partially added).  The EIPIA defines GEV's Confidential

Information as:

> **1.1   Confidential Information / Specialized Information and Training.** The term "Confidential Information" refers to information and  compilations of information, in any form (tangible or intangible), whether or not marked confidential, related to the Company's business and its direct and indirect subsidiaries, including GE Vernova Inc. (together with any subsidiaries, affiliates, successors and assigns of the Company (which includes the business previously conducted General Electric Company or its subsidiaries) and of value to it that I gain knowledge of or access to as a consequence of my employment with the Company if the Company has not made it public or authorized public disclosure of it and it is not readily available through lawful and proper means to the public or others in the industry who have no obligation to keep it confidential.   Confidential Information shall be presumed to include, but is not limited to, the following nonpublic items of information:  Company product roadmaps and planning; customer and prospective customer lists (inclusive of names, addresses, telephone numbers, contact persons, and staffing requirements); pricing variables and criteria (including proposals and analysis related to same); marketing plans and strategies, research and development data, business plans and analysis, buying practices, internal business methods; sources of supply and material, operating and cost data, financial information, and information contained in manuals or memoranda; and trade secrets and other information concerning Work Products that the Company does not make public.  Due to its special value and utility as a compilation, a confidential compilation (like a customer list) will remain protected as Confidential Information even if some items of information within the list are in the public domain. Private disclosure of otherwise Confidential Information to parties the Company is doing business with for business purposes shall not cause the information to lose its protected status under this Agreement. The term "**Specialized Training**" means any instructions, guidance, training, or direction

23.   *Id.* Balasubramanyam acknowledged that GEV would be entitled to injunctive

relief to prevent him from violating his nondisclosure agreement:

> **7.5   Enforcement.** In the event I breach any provision (including any covenant) contained in this Agreement, I agree that Company shall be entitled to (i) injunctive relief to prevent me from violating my obligations under this Agreement, and (ii) any and all other remedies available.  I acknowledge and agree that, in the event of any such breach by me, Company shall suffer immediate and irreparable harm and that money damages will not be adequate to compensate Company or to protect and preserve the status quo.  Therefore, I HEREBY CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION should I breach or attempt to breach any obligation (including any covenant) contained in this Agreement (without Company being required to post any bonds in connection therewith), in addition to any other remedies that may be available to it.  Except as otherwise provided in this Section 7.5 or in the Company's ADR Procedure that covers me, the parties agree that any legal proceeding, commenced by one party against the other, shall be brought only in any state or federal court having proper jurisdiction in the state which the Company has assigned to me as my primary state of employment (normally the state where I primarily reside and work for the Company) during the most recent twelve (12) months of my employment with the Company.  Both parties submit to such jurisdiction, and waive any objection to venue, personal jurisdiction and/or claim of inconvenient forum.  Company and I knowingly and voluntarily waive any and all right to a trial by jury in any action or proceeding arising out of, under or in connection with this Agreement, or the relationship between the parties hereto.

*Id.* (emphasis added).

**D.    Balasubramanyam resigns to work for Bloom Energy in violation of his post-employment obligations to GEV.**

24.    In February 2026, Balasubramanyam was offered a promotion at GEV to Executive Director.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 18.  Balasubramanyam declined the promotion in part due to its requirement to relocate away from Houston.  *Id.* at ¶ 18.

25.    Upon information and belief, Balasubramanyam is currently working in a competitive role at Bloom Energy, GEV's direct competitor.  While he told his former boss that his expected title was "VP, Energy Transition" (*Id.* at ¶ 21), Bloom Energy recently represented that Balasubramanyam is actually serving as the Chief of Staff to the Chief Commercial Officer.

26.    Either way, Balasubramanyam's role with Bloom Energy involves promoting and positioning Bloom Energy's competing power generation technologies, providing technical expertise to commercial teams, and evaluating competing products and systems in the marketplace.  *See id.* at ¶ 21; ECF No. 1-1, Ex. A-2.  These responsibilities directly overlap with Balasubramanyam's prior work at GEV, including his involvement in product strategy and competitive analysis.  *See* ECF No. 1-1, Ex. A, Intile Decl. ¶¶ 21, 24; ECF No. 1-1, Ex. A-2.

## V.    LEGAL STANDARD

27.    To be granted a temporary restraining order, the movant must show four elements.  *Computershare Tr. Co. v. Nat'l Ass'n v. Thistle Creek Partners, L.P.*, No. 4:25-CV-03454, 2025 U.S. Dist. LEXIS 267958, at *3 (S.D. Tex. Aug. 20, 2025).  The movant must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest."  *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012).  A movant seeking a preliminary injunction must establish the same elements.  *See Realogy Holdings Corp.*

-10-

*v. Jongebloed*, 957 F.3d 523, 529–30 (5th Cir. 2020) (holding same four elements are required to receive a preliminary injunction).  Each element is met here.

**VI.**　　**ARGUMENT AND AUTHORITIES**

**A.**　　**GEV has a substantial likelihood of success on the merits.**

28.　　A movant must first demonstrate that there is a substantial likelihood that it will prevail on the merits.  *Computershare*, 2025 U.S. Dist. LEXIS 267958, at \*3.  A "substantial" likelihood of success on the merits does not mean "certain."  *Ryan LLC v. FTC*, 739 F. Supp. 3d 496, 5-8 (N.D. Tex. 2024).  "Some likelihood of success can be sufficient to support the issuance of a preliminary injunction."  *Id.*  Additionally, when other preliminary injunction factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief, even if the claim is compensable by damages.  *Bank of Montreal v. Sunrise Energy Co.*, No. H-93-3459, 1994 U.S. Dist. LEXIS 21416, at \*15 (S.D. Tex. Mar. 23, 1994).

29.　　When evaluating this factor, courts look at the substantive law of the movant's claims.  *Id.* at \*14–15.  GEV pled claims for breach of contract and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (TUTSA), all of which GEV is substantially likely to prevail on.

**1.**　　**GEV has a high likelihood of succeeding on the merits of its breach of contract claim on the Grant Agreements.**

30.　　GEV has a high likelihood of succeeding on the merits of its claim for breach of the Grant Agreements because Balasubramanyam breached his post-employment covenant not to compete by working for GEV competitor Bloom Energy.  Under Texas law, a party asserting breach of contract must establish (1) existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained

-11-

as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  Each element has been met here.

> **a.    The Grant Agreements are valid and enforceable, with noncompete provisions ancillary to an enforceable contract.**

31.    GEV and Balasubramanyam entered into a series of valid and enforceable contracts in the form of the Grant Agreements.  ECF No. 1-1, Ex. B, Conrad Decl. ¶ 10.  In exchange for GEV granting Balasubramanyam equity awards on an annual basis and entrusting him with GEV's Confidential Information, Balasubramanyam agreed to certain post-employment covenants, including the noncompete.  *See* ECF No. 1-1, Ex. B-10.

32.    To determine whether a plaintiff has established a probable right to recovery regarding a noncompete, the court "must determine whether the noncompetition clause at issue (1) is ancillary to or part of an otherwise enforceable agreement and (2) contains reasonable limitations as to time, geographic area, and scope of activity that do not impose a greater restraint than is necessary." *Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 Tex. App. LEXIS 3398, at *21–22 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.); TEX. BUS. & COMM. CODE § 15.50(a).

33.    **First**, the Grant Agreements' noncompete is ancillary to an otherwise enforceable agreement.  The Texas Supreme Court has held that an employer that awards stock options in exchange for an employee's covenant not to compete satisfies the ancillary requirement. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011).  Here, Balasubramanyam was provided equity awards in the Grant Agreements in exchange for post-employment covenants, including the noncompete.  ECF No. 1-1, Ex. B-10.  Accordingly, GEV meets the first prong of enforceability.

34.    **Second**, the noncompete contains reasonable restrictions as to time, geographic area, and scope of activity that do not impose a greater restraint than necessary.

35.    The noncompete contains a reasonable restriction of one year.  ECF No. 1-1, Ex. B-10.  Texas courts have repeatedly held that "two to five years is a reasonable time restriction in a non-competition agreement." *Salas v. Chris Christensen Sys.*, No. 10-11-000107-CV, 2011 Tex. App. LEXIS 7530, at *55 (Tex. App.—Waco Sept. 14, 2011, no pet.) (internal citations omitted) (collecting cases); *see also Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).  The noncompete only requires Balasubramanyam to refrain from directly competing with GEV for one year, which falls well short of what Texas courts have found to be a reasonable time restriction.  *See id.*

36.    The noncompete is also reasonable as to its geographic area.  A restrictive covenant "must not restrain [a former employee's] activities into a territory which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his former employer." *See Changing Surface, Inc. v. Crum*, No. 04-02-00056-CV, 2002 Tex. App. LEXIS 6228, at *4–5 (Tex. App.—San Antonio Aug. 28, 2002, no pet.).   Here, Balasubramanyam's noncompete is properly limited as it prohibits him from working for a Competitive Company in the Restricted Area.  Restricted Area is defined as any area within the country in which Balasubramanyam is based where GEV "has material business operations as of [Balasubramanyam's] Termination of Employment and in which [Balasubramanyam] has provided services, had a material presence or influence, or received [GEV's Confidential Information] at any time during the last two years of [Balasubramanyam's] employment with [GEV]." ECF No. 1-1, Ex. B-10.  Balasubramanyam expressly agreed that the "Restricted Area [is] reasonable and appropriate" to protect GEV's business interests and goodwill:

Company or any Affiliate.  The Grantee understands and agrees that, given the nature of the business of the Company and the Affiliates and the Grantee's position with the Company or any Affiliate, the foregoing Restriction Period and Restricted Area are reasonable and appropriate to protect the Company's legitimate business interests and goodwill. The foregoing restrictions do not apply where legally impermissible (such as

*Id.* (emphasis added).

37.     Moreover, because of the nature of Balasubramanyam's prior role with GEV, he had access to, and gained knowledge and possession of, GEV's Confidential Information, including the entirety of GEV's aeroderivative engineering portfolio, which services and competes for customers nationwide.  *See* ECF No. 1-1, Ex. A, Intile Decl. ¶¶ 3, 8.  This knowledge will ultimately "give him the opportunity to enjoy undue advantages in competition with [GEV]."  *See Crum*, 2022 Tex. App. LEXIS 6228, at *5; *see also Accruent, LLC v. Short*, No. 1:17-CV-858-RP, 2018 U.S. Dist. LEXIS 1441, at *11 (S.D. Tex. Jan. 4, 2018) (holding that although the general rule is that a reasonable area is considered to be the territory where the employee worked, "[n]onetheless, courts will uphold a national or global covenant whose scope is justified by the business interest underlying the covenant").  Accordingly, the noncompete's geographic scope is reasonable.

38.     Finally, the noncompete's scope of restricted activity is reasonable.  "The restrictive covenant must bear some relation to the activities of the employee," and must not "impose[] a greater restraint than necessary to protect the business and goodwill of the employer."  *Crum*, 2002 Tex. App. LEXIS 6228, at *4–5.  The noncompete prevents Balasubramanyam from working or providing services for a Competitive Company in the Restricted Area that:

(a)     Are similar in nature to the activities and services [Balasubramanyam] performed for [GEV] (or gained [Confidential Information about]) during the last two years of [Balasubramanyam's] employment; and/or

(b)     will include [Balasubramanyam] working on products or services that are competitive with the products or services [Balasubramanyam]

-14-

worked on during the last two years of [Balasubramanyam's] employment with [GEV].

ECF No. 1-1, Ex. B-10. In other words, the restricted scope of activity directly pertains to the activities, services, and products Balasubramanyam worked on during the last two years of his GEV employment. Because the covenant's purpose is to prevent Balasubramanyam from being able to use the Confidential Information he gained during his GEV employment to compete against GEV, the scope of the noncompete does not impose a greater restraint than is necessary to protect GEV's interests. *See Crum*, 2002 Tex. App. LEXIS 6228, at \*7–8 (holding that "[t]he purpose of a covenant not to compete is to prevent employees who learn a particular business and know that businesses' clients from engaging in a competing business," and "[b]y failing to include any language restraining [the former employee] for working for competitors of [the former employer], the trial court failed to maintain the status quo.").

### b. GEV performed under the Grant Agreements.

39. GEV fully performed its obligations under the Grant Agreements, including, but not limited to, providing Balasubramanyam with substantial equity awards and its Confidential Information. ECF No. 1-1, Ex. B, Conrad Decl. ¶ 7, Exs. B-1 through B-10 (Grant Agreements).

### c. Balasubramanyam breached the Grant Agreements' noncompete provision.

40. Balasubramanyam breached the reasonable noncompete provision in the Grant Agreements by working for a GEV direct competitor in a competing role. Upon information and belief, Balasubramanyam is working for Bloom Energy in a role that directly violates the express terms of his noncompete:

> Grantee's Company business segment, or if the Grantee is a Section 16 Officer, the Committee, whether directly or indirectly, perform activities or services in the Restricted Area for any Competitive Company which: (a) are similar in nature to the activities and services the Grantee performed for the Company or any Affiliate (or gained confidential information about, as described in the Employee Innovation and Proprietary Information Agreement or similar agreement with the Company, or "EIPIA") during the last two years of Grantee's employment; and/or (b) will include Grantee working on products or services that are competitive with the products or services the Grantee worked on during the last two years of Grantee's employment with the Company or any Affiliate.

*Id.* at Ex. B-10 (emphasis added). Bloom Energy is a direct competitor of GEV— both companies compete for the same opportunities in the power generation space. ECF No. 1-1, Ex. A, Intile Decl. ¶ 20. And, the Grant Agreements prohibit Balasubramanyam from serving in a role where he would perform activities or services that "(a) are similar in nature to the activities and services" Balasubramanyam performed at GEV, as well as working in a role that includes "working on products or services that are competitive with the products or services" Balasubramanyam worked on during the last two years of his employment with GEV. ECF No. 1-1, Ex. B-10. Upon information and belief, Balasubramanyam's current role at Bloom Energy does exactly that and invites inevitable reliance upon and sharing of GEV's Confidential Information. *See* ECF No. 1-1, Ex. A, Intile Decl. ¶¶ 20–21, 23–24.

> **d.      GEV has been irreparably harmed by Balasubramanyam's breach.**

41.      GEV has suffered damages in the form of irreparable harm due to Balasubramanyam's failure to comply with the noncompete provision in the Grant Agreements. *See infra* § IV(B). GEV has and will continue to suffer irreparable harm if Balasubramanyam is permitted to work in his current role due to his knowledge of GEV's Confidential Information. ECF No. 1-1, Ex. A, Intile Decl. ¶ 24.

42.      Accordingly, GEV has demonstrated a substantial likelihood of success on its breach of contract claim relating to the noncompete provision contained in the Grant Agreements.

-16-

**2.    GEV has a high likelihood of succeeding on the merits of its breach of the EIPIA claim.**

43.     GEV has a high likelihood of succeeding on the merits of its breach of the EIPIA claim because Balasubramanyam breached his post-employment nondisclosure obligations by joining Bloom Energy in a role that violates his noncompete.

44.     Like the Grant Agreements, the EIPIA is a valid and enforceable contract.  GEV and Balasubramanyam entered the EIPIA on May 1, 2025.  ECF No. 1-1, Ex. A-2.  In consideration for "the grant to me of access to, and use of, [GEV's] Confidential Information," Balasubramanyam agreed that he would "hold in confidence and will not disclose, use, lecture upon, or publish any of [GEV's] Confidential Information[.]"  *Id.*  "Nondisclosure agreements are readily enforced in Texas and do not generally violate public policy."  *McGowan & Co., Inc. v. Bogan*, 93 F. Supp. 3d 624, 636 (S.D. Tex. 2015) (citing *Marsh*, 354 S.W.3d at 768).

45.     Second, GEV fully performed its obligations under the EIPIA including, providing Balasubramanyam with its Confidential Information.  *See* ECF No. 1-1, Ex. A-2.

46.     Third, Balasubramanyam breached his nondisclosure obligations by joining Bloom Energy in a competitive role.  *See* ECF No. 1-1, Ex. B-10.  Because of the companies' direct competition in the power generation space, Balasubramanyam's role positions him to necessarily and inevitably use, disclose, and rely on GEV's Confidential Information.  GEV's Confidential Information includes GEV's commercial realities such as pricing, margins, lead times, investment strategy, and competitive intelligence, all of which will inform Balasubramanyam's work and provide Bloom Energy with an unfair competitive advantage derived from GEV's Confidential Information.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 24.

47.     Fourth, GEV has suffered damages in the form of irreparable harm due to Balasubramanyam's failure to comply with the nondisclosure provision in the Grant Agreements.

-17-

*See infra* § IV(B).   GEV has and will continue to suffer substantial irreparable harm if Balasubramanyam is permitted to work for Bloom Energy due to his knowledge of GEV's Confidential Information.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 24.

48.     Accordingly, GEV has demonstrated a substantial likelihood of success on its breach of contract claim relating to the nondisclosure provision contained in the EIPIA.

### 3.     GEV has a high likelihood of succeeding on the merits of its trade secret misappropriation claim.

49.     GEV has a high likelihood of succeeding on the merits of its trade secret misappropriation claim under TUTSA.  At the preliminary injunction stage, "a trial court does not decide whether the information to be protected is a trade secret or whether appellants are using the information.  Instead, [the applicant] has only to establish that the information is entitled to trade secret protection until a trial on the merits and that [the defendant is] in possession of the information and in a position to use it." *Daniels v. Radley Staffing, LLC*, No. 14-19-00054-CV, 2021 Tex. App. LEXIS 635, at *11–12 (Tex. App.—Houston [14th Dist.] Jan. 28, 2021, no pet.) (internal citations omitted).  Further, misappropriation under TUTSA can be shown when the trade secrets were acquired under circumstances giving rise to a duty to maintain secrecy or limit use. *See id.* at *10 (citing TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii)(b)).

50.     GEV's Confidential Information is entitled to trade secret protection until a trial on the merits.  Texas law holds that an applicant for injunctive relief before a full trial on the merits has met its burden by showing access to the information was limited, the information was not intended to be shared outside the company, and that a competitor could use the information to gain an advantage over the former employer. *See Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App.—Fort Worth 2003, no pet.); *Daniels*, 2021 Tex. App. LEXIS 635, at *12–15

(relying on *Fox* to hold that sufficient evidence was presented to show documents were entitled to trade secret protection at the temporary injunction stage).

51.    GEV's Confidential Information includes: (a) GEV's lead times and internal assessments of its competitive positioning; (b) GEV's pricing strategies, cost structures, revenue and margin information, and other highly sensitive commercial data; (c) GEV's long-term strategy, including its product roadmap, planned sales, and segment position through 2030 and beyond; (d) GEV's investment strategies, including capital investment, emerging product development, and expansion into adjacent segments; (e) GEV's industrialization strategy and proprietary engineering know-how, including efforts to adapt aerospace-derived technology for commercial applications and optimize repair processes and supply chains; (f) GEV's key commercial agreements and strategic relationships governing access to critical technology and components; and (g) GEV's customer names and competitive intelligence, including priority and target customers, customer vulnerabilities, and GEV's internal assessments of competitors and competing technologies. *See* ECF No. 1-1, Ex. A, Intile Decl. ¶¶ 8–14. GEV takes reasonable precautions to maintain confidentiality of this information, which is non-public and provides GEV a competitive advantage in its business. *Id.* at ¶ 15. Like the protected information in *Fox*, GEV's Confidential Information is entitled to trade secret protection. *See Fox*, 121 S.W.3d at 860.

52.    Additionally, there is threatened misappropriation of GEV's Confidential Information pursuant to TUTSA Sections 134A.002(3)(B)(ii)(b) and 134A.003(a). TUTSA allows for injunctive relief of "[a]ctual or threatened misappropriation." TEX. CIV. PRAC. & REM. CODE § 134A.003; *see also Signet Mar. Corp. v. Kykanen*, No. H-23-1269, 2023 U.S. Dist. LEXIS 192167, at *2 (S.D. Tex. Oct. 26, 2023) ("Requiring a plaintiff to plead an injury flowing from a

-19-

misappropriation of trade secrets would undermine the availability of injunctive relief when the misappropriation is merely threatened.").

53.    Balasubramanyam is in possession of GEV's Confidential Information and is in a position to use and/or share it with others.   "Evidence that a former employee possesses confidential information and is in a position to use it against the employer supports the issuance of an injunction . . . regardless of whether the information is contained in documents or the employee's brain."  *HMS Holdings v. Public Consulting Grp.*, No., 05-15-00925-CV, 2016 Tex. App. LEXIS 3131, at *11–12 (Tex. App.—Dallas Mar. 28, 2016, no pet.).   Balasubramanyam has extensive knowledge of GEV's Confidential Information, including the Gas Power Segment's business activities and short- and long-term strategies.   ECF No. 1-1, Ex. A, Intile Decl. ¶¶ 8–12.

54.    Finally, Balasubramanyam is working for GEV's direct competitor in a role where GEV's Confidential Information could be used to directly and detrimentally compete against GEV. *Transperfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 757 (S.D. Tex. 2009) ("Where there is a high degree of similarity between the employee's former and future employer, it becomes likely . . . that the former's confidential information will be used and disclosed in the course of his work.").   Because Balasubramanyam is in possession of GEV's Confidential Information and is working for a direct competitor in a role that violates his noncompete, injury to GEV can be presumed for purposes of preliminary injunctive relief.   *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.) ("When a defendant possesses trade secrets and is in a position to use them harm to the trade secret owner may be presumed," and "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law"); *see also Fox*, 121 S.W.3d at 860 ("need only prove that [former employee] is in possession of the [trade secrets] and is in a position to use it."); *T-N-T Motorsports v. Hennessey Motorsports*, 965

S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (holding that appellant possessed confidential information of former employer and was in a position to use it);  *Rugen v. Interactive Business Sys.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ) (affirming injunctive relief where a former employee possessed confidential information, was working for a competitor, and was in a position to use that information—even though she had not yet done so).

**B.    GEV will suffer irreparable harm if a temporary restraining order and preliminary injunction are not granted.**

55.    GEV will suffer irreparable harm if a temporary restraining order and preliminary injunction are not granted because GEV has no adequate remedy at law for Balasubramanyam's breach of his noncompete obligations, nondisclosure obligations, and misappropriation of GEV's trade secrets.

56.    First, Balasubramanyam expressly agreed that breach of his noncompete obligations "inevitably would cause substantial and irreparable damage to [GEV] for which money damages may not be an adequate remedy."  ECF No. 1-1, Ex. B-10.  For his nondisclosure obligations, he "acknowledge[d] and agree[d] that, in the event of any such breach by me, [GEV] shall suffer immediate and irreparable harm and that money damages will not be adequate to compensate [GEV] or to protect and preserve the status quo."  ECF No. 1-1, Ex. A-2.  Therefore, the parties are in agreement that Balasubramanyam's breaches of his post-employment obligations constitute irreparable harm.

57.    Second, even in the absence of Balasubramanyam's contractual agreements, Balasubramanyam's breaches of his post-employment obligations and misappropriation of GEV's trade secrets will continue to cause irreparable harm to GEV for which there is no adequate remedy at law.  Texas courts have consistently found that harm arising out of breach of a noncompete is

the "epitome of irreparable injury." *See, e.g.*, *Daily Instruments Corp. v. Heidt*, 988 F. Supp. 2d 553, 569 (S.D. Tex. 2014); *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 858 (W.D. Tex. 2016); *Traders Int'l Ltd. v. Scheuermann*, No. H-06-1632, 2006 U.S. Dist. LEXIS 61995, at *27 (S.D. Tex. Aug. 30, 2006); *Am. Exp. Fin. Advisor, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996).

58.     The harm that GEV will suffer is imminent, as Balasubramanyam is now working for a direct competitor of GEV and is positioned to use GEV's Confidential Information. *See T-N-T Motorsport*, 965 S.W.2d at 24 (upholding a temporary injunction where defendant possessed confidential information and was in a position to use it to his former employer's detriment); *IAC*, 160 S.W.3d at 200 ("When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed," and "[t]he threatened disclosure of trade secrets constitutes [imminent and] irreparable injury as a matter of law.").

59.     GEV, therefore, lacks an adequate remedy at law and will continue to suffer irreparable harm from Balasubramanyam's wrongful conduct absent a temporary restraining order and preliminary injunction.

**C.     GEV's threatened injury greatly outweighs any potential harm to Balasubramanyam.**

60.     The threatened injury to GEV resulting from Balasubramanyam's breach of the Grant Agreements, the EIPIA, and his misappropriation of GEV's trade secrets, significantly outweighs any potential harm that Balasubramanyam may claim.  As courts have recognized, "[t]he damage an injunction might cause a nonmoving party may be outweighed by the threat of an ineffective remedy for the plaintiff." *See, e.g.*, *BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, No. H-09-2539, 2010 U.S. Dist. LEXIS 93503, at *13 (S.D. Tex. July 6, 2010).

61.     Here, GEV and Bloom Energy compete for the same opportunities in the power generation space.  ECF No. 1-1, Ex. A, Intile Decl. ¶ 20.  Bloom Energy's solid oxide fuel cell

technology competes with GEV's aeroderivative gas turbines for data center customers and other behind-the-meter customers. *Id.* at ¶ 20. Due to the sheer nature and breadth of GEV's Confidential Information, Balasubramanyam cannot compartmentalize it while working for Bloom Energy in a competitive role. *Id.* at ¶ 24. Even without affirmative disclosure, Balasubramanyam's knowledge of GEV's Confidential Information—including commercial realities like pricing, margins, lead times, investment strategy, and competitive intelligence—will inform his work at Bloom Energy and provide Bloom Energy with an unfair competitive advantage derived from GEV's Confidential Information. *Id.* at ¶ 24.

62. Balasubramanyam also expressly agreed that his breach of the noncompete "inevitably would cause substantial and irreparable damage" to GEV. ECF No. 1-1, Ex. B-10. He "consent[ed] to the issuance of a temporary restraining order or a preliminary or permanent injunction should I breach or attempt to breach any obligation (including any covenant)" contained in the EIPIA. ECF No. 1-1, Ex. A-2. Balasubramanyam will not suffer unfair prejudice by being held to the terms of the agreement he voluntarily entered. *See Hartford Fire Ins. Co. v. 3i Constr., LLC*, NO. 3:16-CV-00992-M, 2017 U.S. Dist. LEXIS 174549, at *11 (N.D. Tex. May 18, 2017) ("[t]he Indemnitors are not unfairly prejudiced by being held to the agreement to indemnify Hartford to which they were signatories."). Balasubramanyam expressly agreed to the obligations he now breaches. Yet now, Balasubramanyam seeks to evade his post-employment obligations he agreed to in exchange for substantial equity awards and GEV's Confidential Information.

63. Accordingly, a temporary restraining order and preliminary injunction requiring Balasubramanyam to honor his commitments by following his noncompete and nondisclosure agreements simply requires Balasubramanyam to perform what he already agreed to. *See Hartford*, 2017 U.S. Dist. LEXIS 174549, at *11.

**D.     Granting GEV a temporary restraining order and preliminary injunction will not disserve the public interest.**

64.     Issuance of a temporary restraining order and preliminary injunction in this private matter would not adversely affect the public interest.  "It is in the public interest to uphold contracts." *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 571 (S.D. Tex. 2014).  GEV has not asked this Court for anything beyond what Balasubramanyam was obligated to do under the Grant Agreements and the EIPIA.  Accordingly, requiring Balasubramanyam to honor his post-termination obligations (not to work for a direct competitor and not to disclose GEV's Confidential Information) serves the public interest.  *See id.*

**E.     GEV is willing to post a bond, if necessary.**

65.     Although Balasubramanyam has agreed that GEV "will be entitled to an injunction and/or other equitable relief, without the necessity of posting security, to prevent the breach of" his obligations under the Grant Agreements [ECF No. 1-1, Ex. B-10], GEV is willing to post a reasonable bond pursuant to Federal Rule of Civil Procedure 65(c) if one is deemed necessary by the Court.

**VII.     CONCLUSION**

As has been demonstrated above, Balasubramanyam has willfully breached the terms of the Grant Agreements, the EIPIA, and has misappropriated GEV's Confidential Information in violation of TUTSA.  These wrongful acts have caused and will continue to cause irreparable harm to GEV's legitimate business interests and goodwill—harm that cannot be remedied through monetary damages alone.  Accordingly, GEV respectfully requests that the Court grant this Motion and enter a temporary restraining order and preliminary injunction ordering as follows:

1.     Issue an immediate temporary restraining order and, pending a hearing and later a trial on the merits, a preliminary and permanent injunction ordering that Balasubramanyam be restrained from accepting a job or role until March 27, 2027, where he is involved in, participates in, provides, supervises, or manages (as an

employee, consultant, contractor, officer, owner, director, or otherwise) any activities or services for a GEV competitor (Competitive Company) in the United States that are the same as, or similar in function or purpose to, those Balasubramanyam performed, supervised, participated in, or learned Confidential Information about in the two years preceding Balasubramanyam's separation from GEV, including any commercial role with Bloom Energy;

2.  Issue an immediate temporary restraining order and, pending a hearing and later a trial on the merits, a preliminary and permanent injunction prohibiting Balasubramanyam from directly or indirectly engaging in any use or disclosure of GEV's Confidential Information, which includes trade secrets or other information that have been developed or used by or for the benefit, or at the expense, of GEV that cannot be obtained readily by third parties from outside sources, in whatever form, tangible or intangible;

3.  Set a hearing on GEV's Motion for Temporary Restraining Order on an expedited basis;

4.  Grant GEV's Motion for Expedited Discovery and the request for relief stated therein; and

5.  Grant GEV all other relief, in law or in equity, as this Court deems proper and to which it may be justly entitled.

Respectfully submitted,

**REED SMITH LLP**

*/s/ Julie A. Hardin*
Julie A. Hardin
*Attorney-in-Charge*
State Bar No. 24013613
Southern District of Texas Bar No. 26459
jhardin@reedsmith.com
Nicole S. Soussan
State Bar No. 24079371
Southern District of Texas Bar No. 1055672
nsoussan@reedsmith.com
REED SMITH LLP
1221 McKinney Street, Suite 1200
Houston, Texas 77010
Telephone: (713) 469-3800

***Attorneys for Plaintiff GE Vernova Inc.***

-25-

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, counsel for GEV contacted counsel for Balasubramanyam on April 24, 2026 at approximately 4:35 pm CST via phone and followed by email to confer regarding the substance of this Motion and to request an agreed emergency setting.  As of the time of filing, Balasubramanyam opposes the relief requested herein and has responded that counsel is unavailable on Monday, April 27 and Tuesday, April 28, 2026.  GEV has satisfied the conferral requirement.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April 2026, a copy of the foregoing was served on all counsel of record via the Court's ECF system in accordance with the FEDERAL Rules of Civil Procedure and LR5.5:

Marc D. Katz
Maria A. Garrett
VARTABEDIAN KATZ HESTER & HAYNES LLP
2200 Ross Avenue
Suite 4200W
Dallas, Texas 75201
Telephone: (469) 654-1340
marc.katz@vkhh.com
maria.garrett@vkhh.com

*Attorneys for Defendant*
*Preetham Balasubramanyam*

/s/ *Julie A. Hardin*
Julie A. Hardin